IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KAUAI KUNANA DAIRY INC.; HAWAIIAN FRUIT SPECIALTIES, L.L.C.; JAMES MICHAEL KEEFE formerly doing business as O'KEEFE AND SONS, L.L.C.; CRAIG T. MARUMOTO, L.L.C.; PAUL SMITH formerly doing business as PACIFIC ALLIED PRODUCTS L.L.C.; and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>UNITED STATES OF AMERICA; and DOES 1-100 inclusive,<br><br>        Defendants.<br>_____ | CV. NO. 09-00473 DAE-LEK |

ORDER: (1) DENYING PLAINTIFFS' MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIONS TO SUSPEND APPLICATION OF THE JONES ACT; AND (2) GRANTING DEFENDANTS' COUNTER MOTION TO <u>DISMISS WITH PREJUDICE</u>

On December 7, 2009, the Court heard Plaintiffs' and Defendants'

Motions.  John S. Carroll, Esq., appeared at the hearing on behalf of Plaintiffs;

Rachel S. Moriyama, Assistant U.S. Attorney, appeared at the hearing on behalf of

Defendants. After reviewing the motions and the supporting and opposing memoranda, the Court **DENIES** Plaintiffs' Motion for Preliminary and Permanent Injunctions and **GRANTS** Defendants' Motion to Dismiss with prejudice. (Docs. ## 4, 9.)

BACKGROUND

This matter involves the constitutionality of the cabotage[1] provision of what is commonly referred to as the Jones Act of the Merchant Marine Act of 1920 (the "Jones Act"). See 46 U.S.C. § 55102. This section governs domestic transportation of merchandise over water.[2] All goods shipped between U.S. ports must be shipped on vessels built in the United States that are wholly owned by U.S. citizens and crewed by U.S. citizens. See id. § 55102(b). Any merchandise that is transported in violation of the Jones Act is subject to seizure and forfeiture to the Government, or an amount equal to the value of the merchandise or cost of transportation is recoverable from the person transporting the merchandise. Id.

---

[1] "Cabotage" is defined as the "carrying on of trade along a country's coast; the transport of goods or passengers from one port or place to another in the same country." Black's Law Dictionary 230 (9th ed. 2009).

[2] The Court notes that Plaintiffs cite to numerous sections of the Act in their introduction, however, the substance of their memorandum and their arguments at the hearing on this matter address only the cabotage provisions. As such, the Court limits it review to the cabotage provision.

§ 55102(c).  The purpose of this provision of the Jones Act is to protect the U.S. Merchant Marine, seamen, and shipping industry.  See Am. Haw. Cruises v. Skinner, 713 F. Supp. 452, 457 (D.D.C. 1989); Wirth Ltd. v. S/S Acadia Forest, 537 F.2d 1272 (5th Cir. 1976); Marine Carriers Corp. v. Fowler, 429 F.2d 702 (2nd Cir. 1970).

Kauai Kunana Dairy Inc., Hawaiian Fruit Specialties, LLC, James Michael Keefe (formerly doing business as O'Keefe and Sons LLC), Craig T. Marumoto LLC, and Paul Smith (formerly doing business as Pacific Allied Products LLC) (collectively, "Plaintiffs") are Hawaii companies that are purportedly "in compliance with the Jones Act" since September 1, 1959.  (Doc. # 1 at 4-5.)  Plaintiffs term this period from September 1, 1959 the "Class Period." (Id. at 2.)

On October 7, 2009, Plaintiffs filed the instant Motion for Preliminary and Permanent Injunctions to Suspend Application of the Jones Act.  (Doc. # 4.) Plaintiffs seek to suspend the Jones Act as applied to the State of Hawaii on the theory that it causes the "people of the State of Hawaii" irreparable harm as a result of artificial high prices and restrictions on Hawaiian commerce in violation of

Article 1, section 8, clause 3 of the U.S. Constitution (the "Commerce Clause").[3] Plaintiffs claim to bring this action on behalf of themselves and "a plaintiff class consisting of all persons and entities in the United States, and its territories and possessions, who have any personal, professional, or commercial relationship with the State of Hawaii such that they are materially affected by the [Jones Act]." (Doc. # 1 at 2.)

Plaintiffs assert that they, and other members of their "class,"[4] purchased products which were shipped in compliance with the Jones Act and were harmed thereby. (Id. at 5.) The Jones Act allegedly created "a monopoly of ocean freight and automobiles between the continental United States, Hawaii, Guam, and the Mid-Pacific." (Id.)

The injuries that Plaintiffs allege include: (1) loss of agriculture, business, and tourism to the State of Hawaii; (2) adverse economic impacts; (3) possible violation of the Sherman Act; (4) possible injury to the business and property of plaintiffs; (5) artificially high prices of goods; (6) damages sustained

---

[3] The Commerce Clause empowers Congress to "regulate Commerce with foreign Nations, and among the several States, and with the Indian tribes." U.S. Const. art. 1, § 8, cl. 3.

[4] "Plaintiff believes that here are hundreds, if not thousands, of Class members . . . the exact number and their identities being known by Defendant." (Doc. # 1 at 7.)

by Plaintiffs; and (7) impaired flow of interstate commerce to customers throughout the State of Hawaii. (Id. at 8, 10, 15.)

On November 19, 2009, the Government filed its Opposition and Counter Motion to Dismiss. (Doc. # 9.) On November 27, 2009, Plaintiffs filed their Reply in support of their motion and Opposition to the Government's counter motion. (Doc. # 11.). December 12, 2009, the Government filed the Reply in support of its counter motion.[5] (Doc. # 12.)

## DISCUSSION

I.  Standing

Whether a plaintiff has standing to bring a suit in federal court is a threshold issue for this Court. First and foremost, a party must meet the standing requirements of Article III of the U.S. Constitution. If Plaintiffs cannot establish Article III standing, then this Court has no jurisdiction to hear their claim and the action must be dismissed.

Article III, section 2 provides that a federal court's judicial power extends to all cases arising under the Constitution or laws of the United States, to all cases of admiralty and maritime jurisdiction, and to controversies to which the

---

[5] Pursuant to Local Rule 7.9, the Government's Reply was not filed timely.

United States is a party or to controversies between two or more states or citizens of different states.  U.S. Const. art. III, § 2.

The determination of whether a plaintiff can establish standing involves two related components:  the constitutional "case or controversy" requirements of Article III, and the court-formulated "prudential" considerations. See Warth v. Seldin, 422 U.S. 490, 498 (1975).

First, a plaintiff must meet the case or controversy requirement by showing that:

> (1) it has suffered 'an injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc., 528 U.S. 167, 180-181 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); see also Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 837 (9th Cir. 2007).  If a plaintiff fails to demonstrate a case or controversy, then a federal court lacks subject matter jurisdiction over the suit.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998).

"The doctrine of standing . . . requires federal courts to satisfy themselves that 'the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction.'" Summers v. Earth Island Inst., — U.S. —, 129 S. Ct. 1142, 1149 (2009) (citation omitted). Although an injury may be minimal, the plaintiff must show that he or she suffered a "concrete and particularized" injury that is "actual or imminent" and not "conjectural" or "hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Council of Ins. Agents & Brokers v. Molasky-Arman, 522 F.3d 925, 932 (9th Cir. 2008).

Plaintiffs bear the burden of establishing standing for each type of relief sought. Summers, 129 S. Ct. at 1148. Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561.

A prudential requirement of the standing doctrine requires that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth, 422 U.S. at 499. Prudential standing further requires that a court consider "whether the alleged injury is more than a mere generalized grievance, whether the plaintiff is asserting

7

her own rights or the rights of third parties, and whether the claim falls within the zone of interests to be protected or regulated by the constitutional guarantee or question." Alaska Right to Life Political Action Comm. v. Feldman, 504 F.3d 840, 848-49 (9th Cir. 2007).

Where a plaintiff seeks to recover under a federal statute, he must also show that he falls within the category of persons for which that statute confers standing to bring suit. City of Sausalito v. O'Neill, 386 F.3d 1186, 1199 (9th Cir. 2004) ("[I]t is not enough, however, for a plaintiff to satisfy the constitutional standing requirements of Article III. A plaintiff must also satisfy the non-constitutional standing requirements of the statute under which he or she seeks to bring suit.").

A.   Injury in Fact

To satisfy the Article III standing requirement, Plaintiffs must demonstrate an injury that is actual or imminent, not conjectural or hypothetical. Plaintiffs, however, rely primarily on generalized statements of alleged injury. Plaintiffs do not address the matter of standing in their original motion. In their Reply and Opposition, Plaintiffs again focus on the "impact of the Jones Act on the People of Hawaii." (Reply & Opp'n at 9.) Plaintiffs specifically mention the fact that the "cost of everything from automobiles to grapes, fertilizers to canned

spaghetti" is affected by application of the Jones Act. (Id. at 10.) Also included are general complaints about the high price of conducting business in Hawaii, the cost of consumer goods, a monopoly of shipping companies, and impaired interstate commerce. Plaintiffs state that the "net effect of the enforcement of the Jones Act on the State of Hawaii's population has been draconian." (Mot. at 5.) As an example of this "draconian" impact, Plaintiffs aver that there is "no significant fresh milk production in Hawaii," and that the cost of fertilizers, herbicides, and farm implements results in prohibitively high costs for agriculture production. (Id. at 5-6.) Plaintiffs conclude that "[r]equiring vessels that engage in domestic trade to the U.S.-built and U.S.-manned and owned is a frivolous obstruction to interstate commerce to the State of Hawaii." (Id. at 15.)

    Nowhere in Plaintiffs' original Motion do they actually assert any specific imminent harm to themselves, but Plaintiffs do submit various affidavits attesting to financial losses suffered by certain companies in their Reply and Opposition. (Reply & Opp'n Ex. A-C.) James Keefe, a plaintiff in this action, states that his bakery business went bankrupt in 2008. (Keefe Reply & Opp'n Decl. ¶ 1.) He attests that a "significant" percentage of the price he paid went to freight shipping charges between Hawaii and the U.S. mainland. (Id. ¶ 3.) Keefe then states, without any evidence besides this self-serving affidavit, that "shipping

costs charged by non-U.S. flagged carriers operating between similarly distant world ports run about 40% of those fees charged by Matson and other U.S. flagged carriers." (Id. ¶ 5.) Keefe then concludes that the increase costs in goods from application of the Jones Act was "not the only factor in the demise of O'Keefe & Sons, Bread Bakers, but at an estimated additional cost of 7.5% of income, it was the most significant." (Id. ¶ 7.) Quintin Stephen-Hassard, president of Fred L. Waldron, Ltd., states that the company received bulk shipments of feed for use in manufacture of poultry, swine, and aquaculture, among others, for approximately 90 years. (Stephen-Hassard Reply & Opp'n Decl. ¶ 3.) According to Stephen-Hassard, "costs for shipping these goods by container became prohibitive early on." (Id. ¶ 4.) He then makes various unsubstantiated statements about the relative costs in shipping from the United States versus other countries. Similar complaints about the cost of shipping are made by Paul Smith, another plaintiff in this action. (Reply & Opp'n Ex. C.) Significantly, Plaintiffs argue the high cost of doing business in Hawaii is suffered by <u>all</u> people in Hawaii.

Plaintiffs' general grievances are, as a matter of law, not sufficient to establish standing. See <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 64 (1997) ("An interest shared generally with the public at large in the proper

application of the Constitution and laws will not do."); Lance v. Coffman, 549 U.S. 437, 439 (2007) ("We have consistently held that a plaintiff raising only a generally available grievance about government - claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large- does not state an Article III case or controversy.").

        The affidavits submitted by Plaintiff are not concrete and specific in nature and do not establish standing.  As discussed above, the three affidavits submitted by persons from businesses that have since gone out of business admit that there were other factors involved.  Further, at the hearing on this matter, Plaintiffs' counsel acknowledged that there are no affidavits submitted by owners of the other plaintiff businesses (which Plaintiffs' counsel asserted at the hearing are still in business) alleging that those companies are <u>going to go out of business</u> because of the Jones Act.  In fact, there was no affidavit submitted by those businesses at all.  Of those businesses for which this Court has affidavits before it, an injunction would have no effect because those companies are already out of business - Plaintiffs are in essence seeking damages.  Although economic injury can give rise to constitutional standing, here the evidence does not demonstrate

that Plaintiffs have or will suffer a cognizable injury. See generally Young v. City of Simi Valley, 216 F.3d 807, 815 (9th Cir. 2000) (finding that plaintiffs had demonstrated an injury in fact because plaintiffs had applied for a permit twice and spent $45,000 to obtain a permit before being denied the permit). Plaintiffs have not "'alleged such a personal stake in the outcome of the controversy' as to warrant [their] invocation of federal-court jurisdiction." Warth, 422 U.S. at 498 (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

Moreover, Plaintiffs' attempt to equate their injuries with the disruption in the nation's oil production after Hurricane Katrina is unavailing. Plaintiffs attach an order from the Department of Homeland Security, which temporarily waived compliance with navigation and inspection laws, "in the interest of the national defense," to address threatened or actual shortages of gas line, jet fuel, and other refined products due to the disruption of Hurricane Katrina on the coastwise shipping trade. (Reply & Opp'n Ex. D at 1.) There is no such government-acknowledged threat to national defense in this case. In any case, this petition would be more properly submitted to those agencies, not this Court.

Accordingly, Plaintiffs have failed to demonstrate they suffer injury in fact.

that Plaintiffs have or will suffer a cognizable injury. See generally Young v. City of Simi Valley, 216 F.3d 807, 815 (9th Cir. 2000) (finding that plaintiffs had demonstrated an injury in fact because plaintiffs had applied for a permit twice and spent $45,000 to obtain a permit before being denied the permit). Plaintiffs have not "'alleged such a personal stake in the outcome of the controversy' as to warrant [their] invocation of federal-court jurisdiction." Warth, 422 U.S. at 498 (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

Moreover, Plaintiffs' attempt to equate their injuries with the disruption in the nation's oil production after Hurricane Katrina is unavailing. Plaintiffs attach an order from the Department of Homeland Security, which temporarily waived compliance with navigation and inspection laws, "in the interest of the national defense," to address threatened or actual shortages of gas line, jet fuel, and other refined products due to the disruption of Hurricane Katrina on the coastwise shipping trade. (Reply & Opp'n Ex. D at 1.) There is no such government-acknowledged threat to national defense in this case. In any case, this petition would be more properly submitted to those agencies, not this Court.

Accordingly, Plaintiffs have failed to demonstrate they suffer injury in fact.

B.   Causation and Redressability

The affidavits submitted by Plaintiffs basically make two assertions: (1) their companies went out of business; and (2) the Jones Act makes shipping expensive. Based on the evidence before this Court, there is no credible way for this Court to gauge whether the Jones Act was the cause of their companies' demise, and even whether the Jones Act actually results in higher prices. In fact, Keefe's affidavit explicitly states that there were other factors in the "demise of O'Keefe & Sons. (Keefe Reply & Opp'n Decl. ¶ 7.) Stephen-Hassard also states that the "demise of Fred L. Waldron, Ltd., was not due entirely to the Jones Act." (Stephen-Hassard Reply & Opp'n Decl. ¶ 7.) At best, in a generous interpretation of their pleadings, Plaintiffs have established correlation; correlation does not show causation. For this Court to find otherwise would be a logical fallacy. There is equally no evidence that, were the Government to cease enforcing the Jones Act, the cost of business or goods in Hawaii would go down. As Defendants point out, the cost of goods are impacted by a multitude of other factors and federal and state laws, including immigration laws, labor standards, and workplace standards.

As discussed above, the affidavits before this Court are from companies that have already gone out of business. Plaintiffs have not submitted

13

any affidavits alleging that businesses still in operation will be affected or put out of business by the Jones Act.  The arguments submitted are purely conclusory speculation without evidentiary support.  Plaintiff therefore cannot show either causation or redressability.

      C.     Generalized Grievance

Federal courts have developed a set of prudential requirements that bear on the question of standing, and a primary requirement is that a plaintiff have a personal stake in the matter and not a mere generalized grievance.  As discussed above, Plaintiffs' grievances are the very definition of "general."  Their primary claim is that the "people of the State of Hawaii" suffer irreparable harm as a result of artificial high prices and restrictions on Hawaiian commerce.  These types of allegations to demonstrate standing have been soundly rejected by the U.S. Supreme Court.  E.g., Arizonans for Official English, 520 U.S. at 64.

Moreover, Plaintiffs' stated interests appear entirely unrelated to the class of individuals Congress intended to protect with the Jones Act – seamen and ship owners and operators.  See Am. Maritime Ass'n v. Blumenthal, 458 F. Supp. 849, 856 (D.D.C. 1977), aff'd, 590 F.2d 1156 (D.C. Cir. 1984); Am. Haw. Cruises v. Skinner, 713 F. Supp. 452, 457 (D.D.C. 1989); Wirth Ltd. v. S/S Acadia Forest,

537 F.2d 1272, 1281 n.32 (5th Cir. 1976).  Plaintiffs file suit on behalf of themselves and the people in Hawaii, without limitation to individuals directly involved in shipping.

Accordingly, Plaintiffs do not have standing to assert this claim.  The Court must therefore dismiss this claim with prejudice.  The Government's counter motion to dismiss is GRANTED.

II.     Motion for Preliminary Injunction

Even assuming, arguendo, that Plaintiffs could establish standing, Plaintiffs' motion for preliminary injunction would fail because Plaintiffs cannot demonstrate that they are entitled to this extraordinary remedy.  "[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Def. Council, Inc., — U.S. —, 129 S. Ct. 365, 376 (2008).

Plaintiffs must prove that:  (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest.  Winter, 129 S. Ct. at 365; Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982)); see also Stormans, Inc. v. Selecky,

— F.3d. —, —, 2009 WL 1941550, at * 13 (9th Cir. July 8, 2009) (applying heightened standard mandated by Winter).

For the reasons detailed above, the likelihood that Plaintiffs would succeed on the merits is exceedingly small. Plaintiffs have submitted no affidavits asserting that failure to enjoin the Jones Act would harm the companies that are currently still in operation. Plaintiffs have not submitted any compelling argument to refute Congress' plenary power to regulate interstate commerce. There is certainly no indication that the balance of equities tips in their favor or that enjoining the Jones Act as applied to Hawaii would be in the public interest. It may well be that the cabotage provision of the Jones Act should be amended or repealed. But this is an issue for the U.S. Congress and cannot be accomplished through the vehicle of a generalized grievance lawsuit in federal court. Accordingly, Plaintiffs' motion for preliminary and permanent injunction is DENIED.

CONCLUSION

For the reasons stated above, the Court: (1) DENIES Plaintiffs' motion for preliminary and permanent injunction; and (2) GRANTS Defendants'

Motion to dismiss with prejudice. The Clerk of the Court is hereby directed to enter judgment in favor of Defendants.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, December 8, 2009.



_____
David Alan Ezra
United States District Judge

Kauai Kunana Dairy Inc. et al. v. United States, CV No. 09-00473; ORDER: (1) DENYING PLAINTIFFS' MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIONS TO SUSPEND APPLICATION OF THE JONES ACT; AND (2) GRANTING DEFENDANTS' COUNTER MOTION TO DISMISS WITH PREJUDICE